

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Boise White Paper, L.L.C., Kimberly-Clark Corporation, MeadWestvaco Corp., Rayonier Performance Fibers, LLC, Smurfit-Stone Container Enterprises, Inc., and Blandin Paper Co.,

Civil Action No.: 08cv 3629

MDL Docket No. 1682

          Plaintiffs,

vs.

FMC Corporation and FMC Foret S.A.,

          Defendants.

**FILED**

AUG – 4 2008

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Boise White Paper, L.L.C., Kimberly-Clark Corporation, MeadWestvaco Corp., Rayonier Performance Fibers, LLC, Smurfit-Stone Container Enterprises, Inc. and Blandin Paper Co. ("Plaintiffs") sue FMC Corporation and FMC Foret S.A. (individually and collectively "FMC" or "Defendants") and allege as follows:

### NATURE OF ACTION

1.     This lawsuit concerns an international conspiracy which cartelized the production, pricing and sale of Hydrogen Peroxide in the United States and elsewhere.

2.     Plaintiffs allege that Defendants and their co-conspirators conspired not to compete on the sale of Hydrogen Peroxide sold to Plaintiffs in the United States and elsewhere. Plaintiffs further allege that Defendants' and their co-conspirators' conduct constitutes a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, for which Plaintiffs are entitled to damages and injunctive relief.

KENNY NACHWALTER, P.A.

3.      The allegations in this Complaint are pled in the alternative if necessary to avoid inconsistency.

## JURISDICTION AND VENUE

4.      This civil antitrust action arises under Section 1 of the Sherman Act, 15 U.S.C. § 1, for treble damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15(a), and for permanent injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26.

5.      This Court has subject matter jurisdiction of each of the claims in this action pursuant to 28 U.S.C. §§ 1331 & 1337.

6.      Venue is proper in this Court pursuant to Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15 & 22, and 28 U.S.C. § 1391, for any one or more of the reasons stated in the subparagraphs below.  Each of the subparagraphs below should be read in the alternative if necessary to avoid inconsistency.

(a)     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District, including the sale at artificially high prices of Hydrogen Peroxide.

(b)     Venue is proper in this District pursuant to 28 U.S.C. § 1391© because each Defendant is subject to personal jurisdiction in this District.

(c)     Defendants transact business or are found in this District, or in the case of the foreign Defendant, it transacts business directly and/or through the activities of FMC Corporation who owns (directly or indirectly), dominates and controls it within this District and, therefore, venue is proper under 15 U.S.C. § 22.

(d)     Defendant FMC Corporation maintains its principal place of business in this District.

2

KENNY NACHWALTER, P.A.

(e)    Defendant FMC Foret S.A. is a legal alien and may be sued in any District pursuant to 28 U.S.C. § 1391(d).

(f)    To the extent that there is no District in which this action may otherwise be brought, then venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because one or more Defendants is found in this District.

7.    Defendants are subject to the personal jurisdiction of this Court for any one or more of the reasons stated in the subparagraphs below.  Each of the subparagraphs should be read in the alternative if necessary to avoid inconsistency.

(a)    Defendants are amenable to service of process because each inhabits, transacts business in, has continuous or systematic contacts with, or is found or has sufficient minimum contacts in the United States sufficient to satisfy due process.

(b)    Defendants are amenable to service of process because each inhabits, transacts business in, or is found in this District.  Defendants headquartered outside this District are nevertheless engaged in the business of developing, manufacturing, distributing, advertising and/or selling Hydrogen Peroxide throughout the United States, including in this District.

(c)    Defendants are amenable to service of process because each Defendant belonged to the conspiracy alleged in this Complaint, and their co-conspirators performed unlawful acts in furtherance of the conspiracy in this District including, without limitation, selling Hydrogen Peroxide to Plaintiffs and others in this District at artificially inflated prices.

(d)    Defendants are amenable to service of process pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and the long-arm statute of the State in which this Federal Court sits because each Defendant has transacted business in the State and because the State's

3

KENNY NACHWALTER, P.A.

long-arm statute extends jurisdiction to the limits of due process and each Defendant has sufficient minimum contacts with the State to satisfy due process.

       (e)    This Court has personal jurisdiction over Defendants because they and one or more of their co-conspirators contracted to supply services or goods, including Hydrogen Peroxide, or have agents who contracted to supply materials or goods, including Hydrogen Peroxide, in Pennsylvania; money flowed from Plaintiffs or other purchasers in Pennsylvania to pay Defendants and their co-conspirators for Hydrogen Peroxide; Defendants and one or more of their co-conspirators transact business in Pennsylvania or have agents who transact business on their behalf in Pennsylvania in furtherance of the conspiracy; Defendants and their co-conspirators did or caused one or more unlawful acts to be done, or consequences to occur, in Pennsylvania; and Defendants and their co-conspirators engaged in unlawful conduct described below outside of Pennsylvania causing injury to Plaintiffs in Pennsylvania.

## **PARTIES**

### **Plaintiffs**

      8.    Boise White Paper, L.L.C. ("Boise Cascade") is a Delaware limited liability corporation with its principal place of business in Boise, Idaho. Boise Cascade does business in the United States and elsewhere, and manufactures and/or sells a variety of paper products. Boise Cascade brings this lawsuit on behalf of itself and its assigns, including Boise Cascade Corporation n/k/a OfficeMax Incorporated and Boise Cascade, L.L.C. The reference in this Complaint to Boise Cascade includes its assigns. During time periods relevant to the allegations in this Complaint, Boise Cascade directly purchased Hydrogen Peroxide in the United States from one or more Defendants and/or co-conspirators and sustained injury and damage by reason of the antitrust violations alleged in this Complaint.

4

KENNY NACHWALTER, P.A.

9.     Kimberly-Clark Corporation ("Kimberly-Clark") is a Delaware corporation with its principal place of business in Dallas, Texas.  Kimberly-Clark does business in the United States and elsewhere, and manufactures and/or sells a variety of paper products.  During time periods relevant to the allegations in this Complaint, Kimberly-Clark directly purchased Hydrogen Peroxide in the United States from one or more Defendants and/or co-conspirators and sustained injury and damage by reason of the antitrust violations alleged in this Complaint.

10.     MeadWestvaco Corporation ("MWV") is a Delaware corporation with its principal place of business in Glen Allen, Virginia.  MWV does business in the United States and elsewhere, and manufactures and/or sells a variety of paper and packaging products.  MWV brings this lawsuit on behalf of itself and companies which it acquired by merger, including Westvaco Corporation and The Mead Corporation.  The reference in this Complaint to MWV includes the companies which it acquired by merger.  During time periods relevant to the allegations in this Complaint, MWV directly purchased Hydrogen Peroxide in the United States from one or more Defendants and/or co-conspirators and sustained injury and damage by reason of the antitrust violations alleged in this Complaint.

11.     Rayonier Performance Fibers, LLC ("Rayonier") is a Delaware limited liability company with its principal place of business in Jesup, Georgia.  Rayonier does business in the United States and elsewhere, and manufactures and/or sells a variety of wood pulp products. Rayonier brings this lawsuit on behalf of itself and Rayonier Inc. (collectively "Rayonier").  During time periods relevant to the allegations in this Complaint, Rayonier directly purchased Hydrogen Peroxide in the United States from one or more Defendants and/or co-conspirators and sustained injury and damage by reason of the antitrust violations alleged in this Complaint.

KENNY NACHWALTER, P.A.

12.     Smurfit-Stone Container Enterprises, Inc. ("Smurfit") is a Delaware corporation with its principal place of business in Chicago, Illinois. Smurfit does business in the United States and elsewhere, and manufactures and/or sells a variety of paper products. Smurfit is a successor-in-interest by merger or other acquisition and the reference in this Complaint to Smurfit includes those entities, no longer existing, which Smurfit owns by those transactions. During time periods relevant to the allegations in this Complaint, Smurfit directly purchased Hydrogen Peroxide in the United States from one or more Defendants and/or co-conspirators and sustained injury and damage by reason of the antitrust violations alleged in this Complaint.

13.     Blandin Paper Co. ("Blandin") is a Minnesota corporation with its principal place of business in Grand Rapids, Minnesota. Blandin does business in the United States and elsewhere, and manufactures and/or sells a variety of paper products. During time periods relevant to the allegations in this Complaint, Blandin directly purchased Hydrogen Peroxide in the United States from one or more Defendants and/or co-conspirators and sustained injury and damage by reason of the antitrust violations alleged in this Complaint.

14.     Boise Cascade, Kimberly-Clark, MWV, Rayonier, Smurfit and Blandin are referred to in this Complaint, individually and collectively, as "Plaintiff" or "Plaintiffs." Each Plaintiff is a "person" with standing to sue Defendants for damages and other relief under Section 1 of the Sherman Act, 15 U.S.C. § 1. During time periods relevant to the allegations in this Complaint, each Plaintiff directly purchased from Defendants and/or their co-conspirators in the United States Hydrogen Peroxide which was manufactured by Defendants and/or their co-conspirators.

15.     During time periods relevant to the allegations in this Complaint, Defendants and/or their co-conspirators each engaged in anticompetitive conduct described in this Complaint in the United States and Europe with the intention that it would have, and it did have, a substantial and

6

KENNY NACHWALTER, P.A.

reasonably foreseeable direct, proximate and adverse effect on, and was inextricably linked with, the price of Hydrogen Peroxide sold to Plaintiffs and others in the United States, and that domestic effect gives rise to these claims.

## DEFENDANTS

16.    FMC Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Philadelphia, Pennsylvania.  During time periods relevant to the allegations in this Complaint, FMC Corporation, directly and/or through FMC Foret, manufactured, distributed and/or directly sold Hydrogen Peroxide to Plaintiffs and others in the United States, and engaged in conduct described below in violation of 15 U.S.C. §1.  During time periods relevant to the allegations in this Complaint, FMC was the parent of FMC Foret.

17.    FMC Foret S.A. is a corporation organized and existing under the laws of Spain with its principal place of business at Pba Xavier Cugat 2, Sant Cugat del Valles, E-08174 Spain.  During time periods relevant to the allegations in this Complaint, FMC Foret was a direct or indirect wholly-owned subsidiary of FMC Corporation.  During time periods relevant to the allegations in this Complaint, FMC Foret manufactured, distributed and/or directly sold Hydrogen Peroxide and engaged in conduct described below in violation of 15 U.S.C. §1.

18.    (a)    FMC Corporation and FMC Foret each were members of the conspiracy alleged in this Complaint because of, among other reasons, their respective participation in the conspiracy through the actions of their respective officers, employees and representatives.

(b)    Alternatively, FMC Foret was a member of the conspiracy alleged in this Complaint because of, among other reasons, its status during time periods relevant to these allegations, including during the conspiracy alleged below, as the alter ego or agent of FMC Corporation as evidenced by, among other things, FMC Corporation's ownership (directly or

7

KENNY NACHWALTER, P.A.

indirectly) of FMC Foret, and FMC Corporation's domination or control over: the prices at which FMC Foret sold Hydrogen Peroxide; the hiring and firing of officers or members of the Board of Directors of FMC Foret; the budgets for FMC Foret; the capitalization of and/or loans to FMC Foret; the transfer of officers or employees between FMC Corporation and FMC Foret; financial benefits provided to officers or employees of FMC Foret; the business plan or operation of FMC Foret; officers or employees of FMC Corporation communicated with, serviced or called on purchasers of Hydrogen Peroxide despite the presence or with the knowledge of FMC Foret; and/or FMC Corporation used FMC Foret as its instrumentality and conduit to obtain information about other co-conspirators' production, pricing or sale of Hydrogen Peroxide obtained through conspiracy meetings which FMC Corporation, in turn, used to charge Plaintiffs and others prices for Hydrogen Peroxide that were higher than FMC Corporation would or could have charged in the absence of the collusion among Defendants and their co-conspirators. The foregoing specific allegations reveal that during the conspiracy as alleged below, FMC Corporation dominated or controlled FMC Foret with respect to conspiracy activities as alleged in this Complaint.

(c)     Alternatively, the European Commission ruled on May 3, 2006 that both FMC Foret and FMC Corporation are to be held liable for anticompetitive conduct committed by FMC Foret.  In that decision, the European Commission ruled that FMC Corporation exercised "decisive influence" over FMC Foret, that FMC Corporation presented FMC Foret as an integrated part of its Hydrogen peroxide business, and FMC Corporation knew about FMC Foret's involvement in cartel activities.

## CO-CONSPIRATORS

19.     Other natural people and entities not named as Defendants combined or conspired with Defendants and committed acts in furtherance of the illegal conspiracy set forth in this

KENNY NACHWALTER, P.A.

Complaint.  Plaintiffs reserve the right to amend this Complaint to add other Defendants or allegations based upon further investigation and discovery in the case.

## PRODUCT

20.     Hydrogen Peroxide is an inorganic chemical and oxidizing agent.

21.     Hydrogen Peroxide is a commodity product or possesses commodity-like characteristics.

22.     The market for the production of Hydrogen Peroxide is concentrated, and during time periods relevant to the allegations in this Complaint, that market was dominated by Defendants and their co-conspirators.  During time periods relevant to the allegations in this Complaint, there were barriers to entry regarding the production of Hydrogen Peroxide.  The market for the manufacture of Hydrogen Peroxide is mature (as opposed to a nascent industry) and, but for the conspiracy alleged in this Complaint, manufacturers/sellers, including Defendants and their co-conspirators, compete primarily on price.

23.     During time periods relevant to these allegations, Defendants and their co-conspirators were the dominant producers of Hydrogen Peroxide.

## TRADE AND COMMERCE

24.     During time periods relevant to the allegations in this Complaint, Defendants and their co-conspirators engaged in business that affects or is within the flow of interstate commerce, and the effect of that business on interstate commerce is substantial.  In particular, the activities of Defendants and their co-conspirators are within the flow of interstate and foreign commerce or have a substantial effect upon interstate commerce in that:

9

KENNY NACHWALTER, P.A.

     (a)     Defendants and their co-conspirators sold and shipped substantial quantities of Hydrogen Peroxide in a continuous and uninterrupted flow in interstate commerce to customers located in States other than the States in which the Defendants produced the Persalts.

     (b)     Data, information, correspondence and/or financial material were exchanged between each Defendant in the State in which each is located, incorporated, or has its principal place of business and other States.

     (c)     Money flowed between banks outside of the State in which each Defendant is located, incorporated, or has its principal place of business and other States.

25.     The effect of Defendants' and/or their co-conspirators' anticompetitive conduct on United States commerce gives rise to Plaintiffs' claims.

## GOVERNMENT INVESTIGATIONS AND CRIMINAL PROCEEDINGS

26.     On or about March 14, 2006, the United States Department of Justice announced that Akzo Nobel Chemicals International B.V. and Solvay S.A. had agreed to plead guilty to conspiring to fix prices of Hydrogen Peroxide sold in the United States and elsewhere.  Upon information and belief, the United States Department of Justice granted DeGussa GmbH and DeGussa Corporation amnesty from criminal prosecution for its participation in the conspiracy.

27.     The foregoing agreements to plead guilty in the United States merely define the minimum parameters of the unlawful conspiracy that is the subject of this Complaint.  *See In re Vitamins Antitrust Litigation*, 2000 WL 1475705 at *11 (D.D.C. May 9, 2000) (Hogan, C.J.) ("[T]he Court rejects the notion that the guilty pleas ... foreclose a broader conspiracy.  Guilty pleas are negotiated instruments which take into account not only the culpability of the accused but the Justice Department's resources and other cases requiring the government's attention. The antitrust

10

KENNY NACHWALTER, P.A.

statutes expressly recognize that private Plaintiffs may allege a conspiracy different in some respects from the conspiracy previously alleged by the government.") (citations omitted).

## TOLLING OF THE STATUTE OF
## LIMITATIONS AND FRAUDULENT CONCEALMENT

28.    The statutes of limitation as to Defendants' continuing antitrust violations were tolled, among other reasons, because of the following allegations which may be additive or read in the alternative.

(a)    Under 15 U.S.C. § 16(I), the statutes of limitations are tolled until one year after the date of the conclusion of the United States' last criminal prosecution of Defendants and co-conspirators regarding Hydrogen Peroxide.

(b)    The pendency of class action complaints against Defendants for conspiring to fix prices of Hydrogen Peroxide tolls the running of the statutes of limitations.

(c)    Defendants' fraudulent concealment as alleged below tolled the statute of limitations.

29.    Plaintiffs did not know more than 4 years before filing this lawsuit that Defendants and/or their co-conspirators had entered into the conspiracy alleged in this Complaint not to compete on the sale of Hydrogen Peroxide sold to Plaintiffs or others in the United States.

30.    During time periods relevant to the allegations in this Complaint, each Plaintiff used a method of purchasing Hydrogen Peroxide that caused each to believe in good faith at the time that each was receiving competitive prices for Hydrogen Peroxide that each directly purchased from one or more Defendants or their co-conspirators.  Unfortunately, as alleged below, as a proximate result of the conspiracy, Defendants and their co-conspirators overcharged Plaintiffs for Hydrogen Peroxide during time periods relevant to Plaintiffs' antitrust claims despite each Plaintiff's due diligence.

11

KENNY NACHWALTER, P.A.

31.     Defendants' and their co-conspirators' conspiracy was self-concealing which prevented Plaintiffs from discovering its existence more than 4 years before filing this lawsuit. Notwithstanding the self-concealing nature of their conspiracy, Defendants and their co-conspirators wrongfully and affirmatively concealed the existence of their continuing combination and conspiracy from Plaintiffs by, without limitation, one or more of the following acts:

(a)     Providing Plaintiffs and others with false or misleading explanations for the increase in prices of Hydrogen Peroxide so as to create the illusion that such changes in prices were the result of unilateral conduct when, in fact, they were the product of collusion;

(b)     Issuing price announcements for Hydrogen Peroxide so as to create the illusion of competitive pricing in the industry when, in fact, the pricing was not competitive;

(c)     Instructing members of the conspiracy not to divulge the existence of the conspiracy to others not in the conspiracy;

(d)     Confining the anticompetitive, unlawful plan to a limited number of people and key officials at each Defendant company;

(e)     Avoiding either references in documents or the creation of documents otherwise generated in the ordinary course of Defendants' and/or their co-conspirators' businesses regarding conduct which would constitute an antitrust violation or anticompetitive act;

(f)     Conducting covert, secret conspiracy communications or meetings in the United States and/or in Europe;

(g)     Falsifying expense reports and/or other documents; and

(h)     Submitting prearranged, complementary losing bids on contracts for the sale of Hydrogen Peroxide so as to create the illusion of competition when, in fact, the bids were not competitive.

12

KENNY NACHWALTER, P.A.

32.    Plaintiffs did not discover and could not have discovered through the exercise of reasonable diligence the existence of the claims sued upon before the statutes of limitations were tolled because of the self-concealing character of the conspiracy and/or because of Defendants' and their co-conspirators' fraudulent concealment of the conspiracy as alleged above.

33.    Plaintiffs' claims have been brought within the applicable limitations period.

## OVERT, UNLAWFUL ACTS SUPPORTING ANTITRUST VIOLATIONS

34.    Between about 1994 and 1997, Defendants and their co-conspirators participated in many communications on Hydrogen Peroxide prices, production output, sales and market conditions in or regarding Europe and/or North America (including the United States).  The European Commission found that these communications were part of or reflected a cartel among Defendants and their co-conspirators to fix prices of Hydrogen Peroxide (and Persalts). Regardless of the European Commission findings, the many communications between or among Defendants and/or their co-conspirators in the 1994-1997 period distorted competition in the sale of Hydrogen Peroxide to Plaintiffs and others in the United States and elsewhere.  In fact, during the 1994-1997 period, Defendants and their co-conspirators increased prices of Hydrogen Peroxide a number of times in lockstep fashion in the United States after having failed to do so in the preceding five years.  When Hydrogen Peroxide prices declined in 1997/98, Defendants and their co-conspirators conspired, or continued to conspire, not to compete on the sale of Hydrogen Peroxide sold to Plaintiffs and others in the United States and elsewhere by, among other conduct, fixing prices of, allocating customers for, and/or restricting production output or production capacity of Hydrogen Peroxide as alleged in this Complaint.

35.    Defendants and their co-conspirators communicated pursuant to their unlawful conspiracy through bi-lateral or multi-lateral communications that occurred independent of, or at

13

KENNY NACHWALTER, P.A.

or incident to, trade association meetings that provided them with a convenient cover to conceal their unlawful actions. Such trade associations included The European Chemical Industry Counsel ("CEFIC"), The Chemical Manufacturers Association ("CMA"), and the Canadian Pulp and Paper Association. CEFIC, in particular, had a "Chemistry Sector" or division called "Peroxygens" which CEFIC itself describes as a family of products comprising Hydrogen Peroxide and Persalts. Members of the Peroxygen Sector during times relevant to the allegations in this Complaint included Defendants and their co-conspirators.

36.      Defendants' and their co-conspirators' unlawful conduct was international in scope and extended to Hydrogen Peroxide sold in North America (including the United States) and Europe. For example, Defendants and their co-conspirators coordinated Hydrogen Peroxide prices and agreed to limit Hydrogen Peroxide capacity in the United States during meetings held in Europe; Defendants and their co-conspirators met, communicated and/or schemed in Europe although their unlawful activities addressed Hydrogen Peroxide pricing in the United States; Defendants' and their co-conspirators' representatives were directly involved in, supervised and/or coordinated with their European counterparts on such competitively-sensitive matters as strategy, marketing, pricing and capacity pertaining to Hydrogen Peroxide produced and sold in the United States; and Defendants and their co-conspirators negotiated and set prices for certain "global" or "multinatonal" Hydrogen Peroxide and Persalts customers on a global basis which included the European and North American markets.

37.      Conspiracy communications included, without limitation, the following examples of unlawful communications between or among Defendants and their co-conspirators:

(a)      In the 1997-1998 period, FMC communicated with co-conspirator DeGussa about the Hydrogen Peroxide market, overcapacity and the need for "pricing discipline" among the

KENNY NACHWALTER, P.A.

producers. During this period, FMC also communicated with co-conspirator Solvay about Hydrogen Peroxide production capacity, and they exchanged assurances that they would maintain market shares and not decrease Hydrogen Peroxide prices. FMC's unlawful communications with co-conspirators during this period occurred in and pertained to the United States and Europe. FMC Foret coordinated and communicated with FMC Corporation in connection with these competitor communications.

(b)      During 1998, FMC and co-conspirators, including but not limited to, DeGussa and Solvay, communicated and exchanged assurances (which they acted on) not to increase Hydrogen Peroxide production capacity, not to decrease Hydrogen Peroxide prices, and not to compete for each other's Hydrogen Peroxide customers in the United States.

(c)      Between approximately the Summer and Fall of 1998, FMC and co-conspirators, including but not limited to, DeGussa and Solvay, collusively reduced their respective capacity to produce Hydrogen Peroxide in the United States.

(d)      Later in 1998, FMC and co-conspirators, including but not limited to, DeGussa, Solvay and Akzo, collusively increased prices of Hydrogen Peroxide sold in the United States.

(e)      In approximately July/August 1999, FMC and co-conspirators, including but not limited to, DeGussa, Solvay and Akzo, again collusively increased prices of Hydrogen Peroxide sold in the United States.

(f)      In about January/February 2000, FMC and co-conspirators, including but not limited to, DeGussa, Solvay and Akzo, again collusively increased prices of Hydrogen Peroxide sold in the United States.

KENNY NACHWALTER, P.A.

(g)     In about July 2000, FMC and co-conspirators, including but not limited to, DeGussa, Solvay and Akzo, again collusively increased prices of Hydrogen Peroxide sold in the United States.

(h)     Between 2000 and early 2001, FMC and co-conspirators, including but not limited to, DeGussa, Solvay and Akzo, again collusively increased prices of Hydrogen Peroxide sold in the United States.

## ANTITRUST VIOLATIONS

38.     Beginning at least in 1998, and possibly as early as 1994, and continuing in effect until approximately the 2001/2002 time period, Defendants and their co-conspirators engaged in a continuing agreement, understanding and conspiracy not to compete on the sale of Hydrogen Peroxide sold to Plaintiffs and others in the United States in unreasonable restraint of trade and commerce in *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

39.     The contract, combination and conspiracy among Defendants and their co-conspirators described in the immediately preceding paragraph consisted of a continuing course, pattern and practice of conduct regarding the production, pricing and sale of Hydrogen Peroxide in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

40.     The course, pattern and practice of conduct described above included, among other conduct, a continuing agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms and purpose of which were:

(a)     To fix, stabilize, maintain and/or raise Hydrogen Peroxide prices in the United States and Europe;

(b)     To allocate the volume of sales and/or market shares of Hydrogen Peroxide in the United States and Europe;

16

(c)     To allocate contracts to supply Hydrogen Peroxide in the United States and Europe; and/or

(d)     To control or reduce the output of and/or capacity to produce Hydrogen Peroxide in the United States and Europe.

41.     In order to formulate and effect the foregoing illegal combination and conspiracy, Defendants and their co-conspirators engaged in one or more of the following overt acts:

(a)     They agreed to exchange and did exchange current and future price information about Hydrogen Peroxide sold in the United States and Europe;

(b)     They agreed to coordinate and did coordinate price levels and price movements of Hydrogen Peroxide sold in the United States and Europe;

(c)     They agreed on prices and price levels of Hydrogen Peroxide sold in the United States and Europe;

(d)     They agreed to fix, stabilize, maintain and/or increase, and fixed, stabilized, maintained and/or increased, United States and European price and price levels of Hydrogen Peroxide in relation to each other;

(e)     They agreed to allocate and allocated United States and European Hydrogen Peroxide customers or sales volume, or both, among themselves;

(f)     They agreed to allocate and allocated market share of United States and European Hydrogen Peroxide among themselves; and/or

(g)     They agreed to control or reduce, and did control or reduce, the output of and/or capacity to produce Hydrogen Peroxide in the United States and/or Europe.

42.     Defendants and their co-conspirators entered into and refined their illegal combination and conspiracy through, among other things, the overt acts described above, including

17

KENNY NACHWALTER, P.A.

without limitation, participating in communications in the United States and Europe about the prices of Hydrogen Peroxide to be sold and/or the volume of Hydrogen Peroxide to be produced in the United States and Europe; participating in communications in the United States, Europe and elsewhere concerning implementation of and adherence to their conspiracy; issuing price announcements and price quotations in the United States and Europe in accordance with the conspiracy; and/or exchanging information on the sale of Hydrogen Peroxide in the United States and Europe.

43. As a result of Defendants' and their co-conspirators' conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and during times relevant to the allegations in this Complaint:

(a) Price competition in the sale of Hydrogen Peroxide among Defendants and their co-conspirators to Plaintiffs and others has been restrained, suppressed and eliminated;

(b) Prices for Hydrogen Peroxide sold by Defendants and their co-conspirators have been raised, fixed, maintained and/or stabilized at artificially high and noncompetitive levels throughout the United States and elsewhere; and

(c) Plaintiffs and other direct purchasers from Defendants and their co-conspirators of Hydrogen Peroxide made by Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

44. Plaintiffs have been injured in their business or property by reason of Defendants' and their co-conspirators' antitrust violations in amounts not yet ascertained. Plaintiffs' injury as a direct purchaser of Hydrogen Peroxide is injury of the type the antitrust laws were designed to prevent and flows from that which makes Defendants' and their co-conspirators' acts unlawful.

KENNY NACHWALTER, P.A.

Plaintiffs seek to recover damages in this case as a result of their direct purchase in the United States of Hydrogen Peroxide sold to Plaintiffs by Defendants and/or their co-conspirators.

45.     Plaintiffs are threatened by continuing loss and damage as a result of Defendants' and their co-conspirators' unlawful conduct, and Plaintiffs are entitled to injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

(a)     A jury verdict in the amount of the compensatory damages sustained by Plaintiffs.

(b)     A judgment against Defendants, jointly and severally, by the Court in treble the amount of the jury verdict, in accordance with Section 4 of the Clayton Act, 15 U.S.C. § 15, and for attorney's fees, costs and interest as allowable by law.

(c)     A permanent injunction pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, enjoining Defendants from future violations of the antitrust laws and from practices which facilitate those violations.

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury of all issues so triable by right to a jury.

KENNY NACHWALTER, P.A.

Dated: July **31**, 2008

Respectfully submitted,

KENNY NACHWALTER, P.A.
Richard Alan Arnold, Esquire
William J. Blechman, Esquire
Douglas H. Patton, Esquire
201 S. Biscayne Boulevard
Suite 1100
Miami, Florida  33131
Tel:    (305) 373-1000
Fax:    (305) 372-1861
E-mail:  wblechman@kennynachwalter.com

By: _____
    William J. Blechman

*Counsel for Plaintiffs*

334448.1

20